UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
DONALD HOOLAN and MARY HOOLAN,

                             Plaintiffs,                       **MEMORANDUM AND ORDER**
                                                      10 CV 3887 (DRH) (ARL)

        - against -

STEWART MANOR COUNTRY CLUB, LLC,
NICHOLAS A. PELLEGRINI, and JOHN DOE
NO. 1 to JOHN DO NO. 20 inclusive, the last
twenty names being fictitious and unknown to
Plaintiff and intended to be persons or entities
having or claiming an interest in or to the
equipment and/or equipment lease which is/are
the subject of this action,

                             Defendants.
----------------------------------------------------------X
**APPEARANCES:**

**NATHAN M. FERST, ESQ.**
Attorneys for Plaintiffs
450 Seventh Avenue
Suite 2701
New York, New York 10123
By:    Nathan M. Ferst, Esq.

**GALLAGHER, HARNETT & LAGALANTE, LLP**
Attorneys for Defendants
380 Lexington Avenue
Suite 2120
New York, New York 10168
By:    Louis M. Lagalante, Esq.

**HURLEY, Senior District Judge:**

Plaintiffs Donald and Mary Hoolan ("plaintiffs") commenced this diversity action

asserting, *inter alia*, that defendant Stewart Manor Country Club, LLC had breached a contract of

sale, and alleging that defendant Nicholas Pellegrini ("Pellegrini"), an attorney, had breached a

"duty of good faith and diligence" by representing both plaintiffs (as the sellers) and Stewart

Manor Country Club, LLC (as the buyer) in the sale.  (Compl. ¶ 33.)

Presently before the Court is plaintiffs' motion, made pursuant to Federal Rule of Civil Procedure ("Rule") 56, seeking summary judgment in their favor and against Stewart Manor Country Club, LLC as to certain of plaintiffs' breach of contract claims.  Plaintiffs also seek summary judgment dismissing the counterclaim asserted against them by defendants.  Finally, plaintiffs seek to withdraw (1) their breach of contract claims that stem from Stewart Manor Country Club, LLC's alleged failure to pay for Donald Hoolan's health and medical insurance coverage, and (2) all claims against Pellegrini and the "John Doe" defendants.  For the reasons set forth below, plaintiffs' motion is denied in all respects.

## BACKGROUND

The material facts, drawn from the parties' Local Civil Rule 56.1 Statements, are undisputed unless otherwise noted.

### The Parties

Donald and Mary Hoolan are a married couple.  For many years prior to 2006, Donald Hoolan ("Donald") was the sole owner of Stewart Manor Country Club, Inc., a New York corporation, that ran a catering business known as the Stewart Manor Country Club, Inc.,[1] located at 51 Salisbury Avenue, Stewart Manor, New York.  The Village of Stewart Manor (the "Village") owns the physical building that houses the catering events, as well as every piece of personal property within that building.  Plaintiffs contend that Stewart Manor Country Club, Inc. owned a license from the Village that enabled it to operate the country club.  (Pls.' 56.1 ¶ 4.)

---

[1]     The sole business of Stewart Manor Country Club, Inc. was to provide catering services.  There were no golf courses, swimming pools, or tennis courts at the location.  (Pls.' 56.1 ¶ 2.)

Defendants dispute plaintiffs' assertion that Stewart Manor Country Club, Inc. "owned a license" from the Village.  (Defs.' Response to Pls.' 56.1 ¶ 4.)  Rather, defendants contend that Stewart Manor Country Club, Inc. was a "lessee" of the Village, and held a lease that "enabled Stewart Manor Country Club, Inc. to run the Country Club."  (*Id.*)

***The Contract of Sale***

When plaintiffs decided to retire and move to Florida, they decided to sell their rights to operate the country club business to Pellegrini, whom Donald had known for many years. Pellegrini, along with other individuals, formed a limited liability company called Stewart Manor Country Club, LLC for the purpose of acquiring plaintiffs' rights to operate the country club business.

Subsequently, Pellegrini drafted a contract of sale (the "Contract of Sale"), which was executed on November 10, 2006.  Plaintiffs assert that Donald, who did not retain a lawyer in connection with the sale, "relied on Pellegrini."  (Pls.' 56.1 ¶ 7.)  Pellegrini asserts that he informed Donald that "I was not representing [Donald] in any capacity, and was in fact representing myself and my interests."  (Decl. of Nicholas Pellegrini, dated Dec. 29, 2011 ("Pellegrini Decl.") ¶ 14.)  Donald does not dispute that he signed an undated document entitled "Acknowledgment," which set forth, *inter alia*, Donald's acknowledgment that Pellegrini was "not representing him as [an] attorney[ ]" in connection with the transaction between Stewart Manor Country Club, Inc. and Stewart Manor Country Club, LLC.  (Pellegrini Decl., Ex. A.)

The parties initially anticipated that Stewart Manor Country Club, Inc. would assign its

lease agreement with the Village[2] to Stewart Manor Country Club, LLC.  In fact, the Contract of Sale explicitly states that the parties' agreement was contingent upon the ability of Stewart Manor Country Club, Inc. "to assign the existing Lease for the Premises" to Stewart Manor Country Club, LLC.  (Decl. of Donald Hoolan, dated Sept. 22, 2011 ("Hoolan Decl."), Ex. D at ¶ 23.)  The Village, however, refused to approve any assignment of the lease.  Accordingly, the parties agreed that Donald would terminate Stewart Manor Country Club, Inc.'s lease with the Village, and then Stewart Manor Country Club, LLC would sign a new lease directly with the Village.  (*See* Pls.' 56.1 ¶ 8; Defs.' Response to Pls.' 56.1 ¶ 8; Defs.' 56.1 ¶ 15.)  Stewart Manor Country Club, Inc. did ultimately terminate its lease with the Village, and Stewart Manor Country Club, LLC signed a new lease directly with the Village.  It is unclear from the record whether these events occurred before or after the November 10, 2006 execution of the Contract of Sale.

The Contract of Sale provided that the total purchase price to be paid by Stewart Manor Country Club, LLC was $800,000.  (Hoolan Decl., Ex. D ¶ 3.)  This amount was broken down as follows: (1) $25,000 was due upon execution of the Contract of Sale; (2) $350,000 was due "[u]pon execution and delivery of Bill of Sale"; (3) $25,000 was due one year from the closing date; and (4) the remaining $400,000 would be paid pursuant to a promissory note, the terms of which were set forth in Schedule A of the Contract of Sale.  (*Id.*)  Schedule A provided:

_____

[2]      As noted above, plaintiffs assert that Stewart Manor Country Club, Inc. held a license from the Village while defendants contend that Stewart Manor Country Club, Inc. was a lessee of the Village.  For ease of reference, the Court will refer to the arrangement between Stewart Manor Country Club, Inc. and the Village as a "lease."

4

> 1.     The Promissory Note shall be paid to Seller [i.e., Stewart Manor Country Club, Inc.] as follows:
>
> > a. $1,500 per week
> >    $1,500 per week (cash)
>
> > b.  Purchaser [i.e., Stewart Manor Country Club, LLC] shall pay the health insurance for Mr. Donald Hoolan under a group plan, family coverage.
>
> Such payments shall continue until the date that the total paid under A & B above, combined, equal the sum of $400,000.  Said payments shall be made to Donald Hoolan and/or his wife Mary Hoolan.
>
> On such date, Seller shall provide Purchaser with a satisfaction of the Note and no further sums shall be due pursuant to this Agreement.

(Hoolan Decl., Ex. D at "Schedule A".)  No promissory note reflecting these terms is included in the record before the Court, and it is unclear whether any such promissory note was ever drafted or signed.

The Contract of Sale also contains a "Liquidated Damages" provision that stated:

> Any willful, capricious or other inexcusable default hereunder on the part of either party shall entitle the aggrieved party to the sum of $25,000 as liquidated damages for breach of this contract in addition to repayment in full of any sum paid hereunder as aforesaid, said amount being hereby agreed upon by reason of the difficulty in reducing the exact damages actually sustained to a mathematical certainty.

(Hoolan Decl., Ex. D ¶ 12.)

### *The Events That Allegedly Transpired Between the Execution of the Contract of Sale and the Transaction's Closing*

Defendants contend that certain problems arose between the time the Contract of Sale was executed on November 10, 2006 and the time the transaction closed, more than one year later on November 26, 2007.  According to defendants, Pellegrini's due diligence uncovered that

5

"the building had substantial structural issues that required significant investment," and that "the business was not as profitable as Mr. Hoolan represented."  (Defs.' 56.1 ¶ 18.)  In addition, and most importantly for present purposes, defendants "discovered a potential sales tax delinquency, as well as four judgments against Stewart Manor [Country Club,] Inc."  (*Id.*)  As a result, defendants claim, "the Contract of Sale, including the purchase price, was negotiated, and renegotiated."  (*Id.* ¶ 19.)  According to defendants, "[b]y the time the transaction closed, almost all of the terms of the Contract of Sale changed, to some extent."  (*Id.*)

As evidence of these changes, defendants point to a "Term Sheet," dated September 13, 2007, which was signed by Pellegrini.  (Pellegrini Decl., Ex. B.)  The Term Sheet states:

Cash on Closing         $300,000

Notes                        $200,000

        – Paid $2,000 every week until $200,000 paid

        – Notes not due in January, February, March.

Don pays Village fees.  Deal is contingent upon getting new Lease.

(*Id.*)  The Term Sheet is attached to an undated, handwritten cover letter signed by Pellegrini and addressed to Donald.  The cover letter states: "Don, I have sent you the terms of our deal – in writing like you wanted.  I have also sent you copies of the 4 judgments we found.  Nick P."  (*Id.*)  According to defendants, "[t]his memorandum reflects just one of the many price and term changes that occurred in the more than a year from contract to closing."  (Defs.' 56.1 ¶ 20.)

Defendants contend that "investigation" and negotiations continued after the Term Sheet was created.  (*Id.* ¶ 21.)  According to defendants, another change was made to the "terms of the deal," to wit: "[t]he Village demanded a lease cancellation fee from Stewart Manor [Country

6

Club,] Inc., which Stewart Manor [Country Club,] LLC paid directly to the Village, as part of the purchase price." (*Id.*)

### The Closing Documents

The parties agree that the transaction closed on November 26, 2007.  Defendants allege that both parties intended, as of that date, that their relationship "would be governed after the closing by the Post-Closing Agreement." (*Id.* ¶ 37.)  Defendants further assert that: "It was also Mr. Pellegrini's intention that the Contract of Sale would be superseded by the Post-Closing Agreement, with the Contract of Sale merging into the Bill of Sale at closing." (*Id.*)

On November 26, 2007, Pellegrini sent Donald a letter, via overnight courier, enclosing several documents.  (Pellegrini Decl., Ex. C at 1; *see also* Pellegrini Decl., Ex. D (DHL Express "Next Day" service delivery slip, dated November 26, 2007).)  The first enclosure, was a check made payable to Donald and Mary Hoolan in the amount of $186,688.41.  (Pellegrini Decl., Ex. C at 2.)  Pellegrini's cover letter explained that this amount represented the net amount due to Stewart Manor Country Club, Inc.  (*Id.* at 1.)  The second document attached to Pellegrini's letter was a document entitled "Post-Closing Agreement." (*Id.* at 3.)  Pellegrini's cover letter enclosed two copies of the Post-Closing Agreement, and instructed Donald to sign and return one copy and keep "one original for your records." (*Id.* at 1.)  Pellegrini also attached a "Notification of Sale, Transfer or Assignment in Bulk" and "Bill of Sale" for Donald's signature.  (*Id.* at 6-8.)

### The Post-Closing Agreement

The Post-Closing Agreement provided that Stewart Manor Country Club, LLC (referred to in the Post-Closing Agreement as the "Purchaser") executed a promissory note in favor of the Stewart Manor Country Club, Inc. (referred to as the "Seller") "in the sum of $100,000." (*Id.* at

3.)[3]  "In addition," the Purchaser agreed to pay "an additional sum of $100,000" to the Seller.

(*Id.*)  The "Payment" section of the Post-Closing Agreement provided:

> A.  Purchaser agrees to pay Seller's comprehensive health insurance (family coverage) for three years commencing on December 1, 2007 and ending on November 30, 2010.
>
> B.  Purchaser shall pay to Seller the sum of $1,000.00 per week commencing on June 1, 2008.
>
> C.  Purchaser shall also pay to Seller the sum of $1,000.00 per week in cash commencing on June 1, 2008.
>
> Said payments shall be made to Donald Hoolan and/or his wife, Mary Hoolan.

(*Id.*)  The Post-Closing Agreement further provided that the Purchaser "shall continue to make the payments listed in paragraph 2 above until such date as the total of all the payments made to Seller or on behalf of Seller, equals $200,000.00." (*Id.*)

In the Post-Closing Agreement, the Seller (Stewart Manor Country Club, Inc.) made representations that "all New York State Sales Tax has been paid to date" and that it "is not liable for any judgments other than the four annexed hereto."  (*Id.* at 4.)  The Seller also agreed to provide the Purchaser (Stewart Manor Country Club, LLC), within sixty days, with "a final sales tax clearance evidencing no tax due for all periods prior to December 1, 2007" and "satisfactions of the four judgments attached hereto."  (*Id.*)  The Post-Closing Agreement provided that if the Purchaser was "responsible, affected by or subject to any debts, liabilities or taxes of Seller," the Purchaser could offset such amount against the payments due to the Seller.  (*Id.*)

---

[3]  According to defendants, the referenced promissory note was never executed because Donald "wanted to receive some or all of his payments in cash, and another substantial portion would be spent on his family health coverage over time, and that amount could not be quantified as of the closing."  (Defs.' 56.1 ¶ 32.)

***The Parties' Dispute Regarding Whether Donald Signed the Post-Closing Agreement***

Pellegrini states that he believes that Donald received his overnight package, which included two copies of the Post-Closing Agreement, because the check for $186,688.41, which was also included in the overnight package, was cashed.  (Pellegrini Decl. ¶ 31 & Ex. E.)  Additionally, Pellegrini states that Donald returned a signed copy of the Notification of Bulk Transfer document, which had also been included in the overnight package.  (Pellegrini Decl., Ex. F.)  Pellegrini "specifically recall[s] speaking with Mr. Hoolan about the package . . . many times on or about November 27, 2007, after he received the overnight package I sent on November 26, 2007. . . . Mr. Hoolan confirmed to me that he received the package and was sending back signed documents."  (Pellegrini Decl. ¶ 33.)  Pellegrini further states in his declaration:

> After an exhaustive search, I have been unable to find an executed copy of the Post-Closing Agreement, or of the Bill of Sale, signed by Mr. Hoolan.  However, I clearly recall receiving those signed documents from him.  Moreover, I have the signed Notification [of Bulk Transfer], which was in the same overnight package, and the check I sent him for the transaction was cashed.  I do not believe I would have allowed Mr. Hoolan to keep the purchase amount had he refused to sign and return the Post-Closing Agreement.

(*Id.* ¶ 34.)

In his affidavit,[4] Donald states: "I do not have that document [i.e., the Post-Closing Agreement] as signed by me, I have no recollection of having signed it or of having seen it before this dispute . . . ."  (Hoolan Decl. ¶ 24.)

---

[4]     Donald was never deposed by defendants during discovery.  (*See* Defs.' Opp'n at 6 n.7.)

9

*Defendants' Allegations Regarding Stewart Manor Country Club, Inc.'s Remaining Tax
Liabilities*

Defendants assert that because they discovered, during the due diligence period, that

Stewart Manor Country Club, Inc. had "four outstanding judgments, as well as a potential

significant sales tax deficiency," the parties incorporated provisions into the Post-Closing

Agreement to ensure that Donald "would, among other things, pay and discharge all outstanding

sales tax obligations within 60 days of the closing . . . ." (Defs.' 56.1 ¶ 40.)  Defendants allege

that Donald never satisfied or discharged Stewart Manor Country Club, Inc.'s sales tax

obligations and, as of April 2011, "there was a notice of sales tax deficiency in the amount of

$33,470.50."  (*Id.* ¶ 42.)  According to Pellegrini, Donald was aware of this sales tax deficiency

and had made some, albeit ultimately unsuccessful, efforts to negotiate the amount due with the

New York State taxing authority.  (*See id.* ¶¶ 43-47.)

Defendants assert that since they began operating the country club in December 2007,

Pellegrini (as well as his business partners and accountant) "have been called many times by the

New York State Department of Taxation and Finance" about the sales tax deficiency owed by

Stewart Manor Country Club, Inc.  (*Id.* ¶ 49.)  According to defendants, representatives from the

State's taxing authority have "visited their offices and left copies of the tax bills, asking

[defendants] to resolve this matter."  (*Id.*)  Even though defendants have advised the State taxing

authority that the outstanding taxes are the responsibility of Stewart Manor Country Club, Inc.,

the State taxing authority "continues to address its concerns" to Stewart Manor Country Club,

LLC.  (*Id.*)  Defendants assert that Stewart Manor Country Club, LLC has been threatened"with

litigation or other action to coerce [it] into paying those outstanding sales taxes."  (*Id.* ¶ 50.)

10

***Plaintiffs' Allegations That Defendants Breached the Contract of Sale***

Plaintiffs allege that Stewart Manor Country Club, LLC "has continuously defaulted in the required periodic payments of $3,000 per month under the Contract of Sale since October, 2008 and continuing to date . . . ."  (Pls.' 56.1 ¶ 12.)  Plaintiffs assert that they are owed a total amount of $87,326.79.  (*Id.*)  Plaintiffs further contend that they are entitled to $25,000 in liquidated damages pursuant to the Contract of Sale, since defendants' breach of that agreement was "willful and inexcusable."  (Pls.' Mem. at 7.)

Defendants assert that the controlling agreement in this case is the Post-Closing Agreement, and because Donald "failed to perform" under that agreement by "failing and refusing to pay the sales taxes indisputably due from him and/or Stewart Manor [Country Club,] Inc.," defendants rightfully withheld the periodic cash payments due to Donald and Mary.  (*See* Defs.' 56.1 ¶ 54.)

## DISCUSSION

### I.  *Summary Judgment Standard*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law.  *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994).  The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  No genuinely triable factual issue exists when the moving party

demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *See Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 254-55.   The court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987).   A district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide the district court in its determination of a summary judgment motion. *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988).   Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *See id.* at 210-11.   Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II.   *Plaintiffs' Motion Seeking Summary Judgment in Their Favor as to Their First and Second Claims is Denied*

In their First Claim, plaintiffs assert that defendants breached the Contract of Sale by defaulting on the "periodic [cash] payments" due to them under that agreement.  (Compl. ¶ 22.) In the Second Claim, plaintiffs seek an award of liquidated damages under the Contract of Sale based upon defendants' alleged breach of that agreement.  (*Id.* ¶ 25.)  Plaintiffs assert that they are entitled to summary judgment in their favor as to both of these claims.

Under New York law, "[t]o recover for a breach of contract, Plaintiff must establish: (1) the existence of an agreement; (2) the plaintiff's adequate performance of that agreement; (3) a breach by the defendant; and (4) damages." *Friedman v. Schwartz*, 2010 WL 3937304, at *2 (E.D.N.Y. Sept. 30, 2010) (citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)).

Plaintiffs assume that the relevant agreement at issue is the Contract of Sale, and contend that there is no dispute that defendants stopped making the periodic cash payments due to them pursuant to that agreement.  (Pls.' Mem. at 7.)  There is, however, a clear factual dispute as to whether the Contract of Sale was the operative agreement governing the parties' relationship at the time that defendants began withholding those cash payments in October 2008.  Plaintiffs point out that defendants cannot produce a copy of the Post-Closing Agreement that has been signed by both parties and, in his sworn declarations submitted in connection with the present motion, Hoolan contends that he has "no recollection" of signing the Post-Closing Agreement, he has "no recollection" of having seen that document prior to this action, and he did not have any copy of the document (signed or unsigned) prior to the commencement of discovery.  (Hoolan

Decl. ¶ 24; Reply Decl. of Donald Hoolan, dated Feb. 16, 2012 ("Hoolan Reply Decl.") ¶ 9.)

Defendants have submitted evidence that they sent Donald a copy of the Post-Closing Agreement with instructions that he sign and return it.  Although they have not submitted evidence in the form of a delivery receipt showing that Donald received these documents, they have shown that plaintiffs cashed the check that was sent in the same package, (Pellegrini Decl., Ex. E), and that Donald executed and returned the "Notification of Sale, Transfer or Assignment" form that was also sent in that package.  (Pellegrini Decl., Ex. F.)  Further, Pellegrini has submitted a sworn declaration in which he states that "clearly recall[s]" receiving a copy of the Post-Closing Agreement that was signed by Donald, even though he cannot currently locate it. (Pellegrini Decl. ¶ 34.)

Thus, the record reflects the existence a genuine issue of material fact as to whether Donald ever signed the Post-Closing Agreement.  *See Banham v. Morgan Stanley & Co. Inc.*, 178 A.D.2d 236, 238 (1st Dep't 1991) (finding "a triable issue is raised by plaintiff's argument that defendant actually executed and delivered the service agreement to him, but that he has lost the signed copy" and noting that "[h]is inability to produce it now does not foreclose proof of its existence and reliance thereon at trial"). *Accord Nat'l City Golf Fin. v. Higher Ground Country Club Mgmt. Co., LLC*, 641 F. Supp. 2d 196, 204-05 (S.D.N.Y. 2009) (finding that the record presented a question of fact as to whether both parties signed an agreement, although the resolution of that question was ultimately unnecessary because it was "not determinative of the existence of an agreement to arbitrate").  This threshold question must be resolved by a fact-

14

finder before any determination may be made regarding defendants' alleged breach.[5]

Furthermore, the viability of plaintiffs' claim for liquidated damages in the Second Claim

depends on which agreement controls, because while the Contract of Sale contains a liquidated

damages provision, the Post-Closing Agreement does not.[6]

Accordingly, plaintiffs' motion for summary judgment in their favor as to their First and

Second Claims for relief is denied.

### III.    *Plaintiffs' Motion Seeking Dismissal of Defendants' Counterclaim is Denied*

In their Answer, defendants asserted a counterclaim against plaintiffs, arguing that

plaintiffs "breached the terms of the Post-Closing Agreement by failing to satisfy [Stewart Manor

Country Club, Inc.'s] liabilities and taxes." (Ans. ¶ 68.)  Plaintiffs devote much of their briefing

to the argument that their transaction with defendants (i.e., their acceptance of payment in

exchange for terminating their lease with the Village) was not the type of "bulk sale" that would

subject Stewart Manor Country Club, LLC to any tax liability under New York law.  (Pls.' Mem.

at 9-10; Reply Mem. at 3-4.)  Plaintiffs further argue that defendants have failed to proffer any

evidence that New York State has ever attempted to enforce any alleged tax obligations of

Stewart Manor Country Club, Inc. against Stewart Manor Country Club, LLC or Pellegrini.

---

[5]    Defendants argue that "plaintiffs are barred from contesting the validity of the Post-Closing Agreement" because they "accept[ed] benefits under the Post-Closing Agreement for years, including the $187,000 check that arrived with the Post-Closing Agreement."  (Defs.' Opp'n at 9, 10.)  It is unclear from the record, however, whether plaintiffs accepted the benefits in question (i.e., the check for $186,688.41, periodic cash payments, and health insurance premium payments) pursuant to the Contract of Sale or the Post-Closing Agreement.

[6]    Thus, the Court declines to address defendants' contention that the liquidated damages provision in the Contract of Sale constitutes an "unenforceable penalty."  (Defs.' Opp'n at 17-20.)

(Hoolan Reply Decl. ¶ 5.)

As set forth in detail above, it is clear that under either the Contract of Sale or the Post-Closing Agreement, Stewart Manor Country Club, Inc. did have some obligations to resolve or take other action regarding its outstanding tax liability.  The exact nature of those obligations, however, would depend on which agreement governed the parties' relationship.  (*Compare* Hoolan Decl., Ex. D (Contract of Sale ¶ 26:  "Seller agrees to indemnify Purchaser against all claims made by the creditors of Seller and State and Local taxing authorities.") *with* Pellegrini Decl., Ex. C (Post-Closing Agreement ¶ 5B: "Seller agrees to provide to Purchaser, within sixty (60) days . . . a final sales tax clearance evidencing no tax due . . . ." and ¶ 6: "If Purchaser is responsible, affected by or subject to any debts, liabilities or taxes of Seller, Purchaser may offset that amount against the payments due Seller . . . .").)

Moreover, defendants have produced documentation indicating that as of at least April 20, 2011, Stewart Manor Country Club, Inc. had significant outstanding tax liability to New York State.  (Pellegrini Decl., Ex. H.)[7]  Although plaintiffs correctly point out that none of the documentation presented in the record names Stewart Manor Country Club, LLC as the entity liable for these outstanding taxes, Pellegrini has submitted a sworn declaration in which he states that the New York State Department of Taxation and Finance has made visits to his business, has "address[ed] its concerns" regarding these outstanding taxes to Stewart Manor Country Club, LLC, and has "threatened Stewart Manor Country Club, LLC with litigation or other action to

---

[7]     Defendants contend that any taxes owed by Stewart Manor Country Club, Inc. are not "bulk transfer taxes" that would have flowed to Stewart Manor Country Club, LLC as a result of any transfer of the business.  (Defs.' Opp'n at 11 n. 9.)  Rather, defendants assert that Donald "incurred a debt of sales tax" while he was operating the country club, and that this deficiency has never been cleared.  (*Id.*)

coerce [it] into paying these outstanding sales taxes."  (Pellegrini Decl. ¶¶ 54, 55.)

Given the myriad of factual questions present on this record, summary judgment is

unwarranted, and plaintiffs' motion seeking the dismissal of defendants' counterclaim is denied.

**IV.**    ***Plaintiffs' Request to Withdraw its Remaining Claims Without Prejudice is Denied***

   **A.**    ***The Third, Fourth, Fifth, and Sixth Claims***

In their Third Claim, plaintiffs assert that defendants breached their contractual

obligations under the Contract of Sale by discontinuing payments for Donald's health insurance

premiums.  (Compl. ¶ 27.)  The Fourth Claim seeks an award of liquidated damages based upon

that breach.  (*Id.* ¶ 31.)  In their Fifth Claim, plaintiffs allege that Pellegrini breached a "duty of

good faith and diligence" by representing both the "Seller," i.e., Stewart Manor Country Club,

Inc., and the "Buyer," i.e., Stewart Manor Country Club, LLC, in the transaction.  (*Id.* ¶¶ 33, 34.)

In their Sixth Claim, plaintiffs assert that Pellegrini was "unjustly enriched" by virtue of this

conduct.  (*Id.* ¶ 39.)  Plaintiffs request leave to withdraw each of these claims.  (Not. of Mot. at 1-

2.)

Rule 41(a)(2), which applies here because defendants have already filed their Answer,

permits plaintiffs to withdraw their claims "only by court order, on terms that the court considers

proper."  Fed. R. Civ. P. 41(a)(2).  The Rule further provides: "Unless the order states otherwise,

a dismissal under this paragraph (2) is without prejudice."  *Id.*  Plaintiffs' Notice of Motion does

not specify whether they wish to withdraw Claims Three, Four, Five, and Six with or without

prejudice, and they do not address the issue at all in their opening brief.  Certain statements in

Hoolan's Declaration, however, imply that plaintiffs are, in fact, requesting dismissal of these

claims without prejudice.  (*See, e.g.*, Hoolan Decl. ¶ 51 ("[A]t this time my wife and I do not

wish to pursue this claim . . . .")  Defendants assert that any dismissal of these claims should be with prejudice because plaintiffs have effectively conceded that these claims lack merit.  (Defs.' Opp'n at 22-23.)

Based on the evidence before the Court, it does appear that these claims are not viable. With respect to plaintiffs' breach of contract claims based upon defendants' alleged failure to pay Donald's health insurance premiums, i.e., the Third and Fourth Claims, Donald states in his declaration that: "After commencement of this action, and after confusion caused by Defendant Stewart Manor Country Club, LLC's moving coverage from one carrier to another, there was indeed [health insurance] coverage for me until Medicare eligibility mooted the need for such coverage for me."  (Hoolan Decl. ¶ 50.)  With respect to his Fifth and Sixth Claims against Pellegrini, Donald concedes that he signed an acknowledgment that Pellegrini was not acting as his attorney in connection with the transaction between Stewart Manor Country Club, Inc. and Stewart Manor Country Club, LLC.  (Hoolan Decl. ¶ 51; Pellegrini Decl., Ex. A.)

Dismissals pursuant to Rule 41(a)(2) are left to the Court's "sound discretion."  *See Catanzano v. Wing*, 277 F.3d 99, 109 (2d Cir. 2001).  There are several factors that are relevant to the Court's exercise of this discretion: (1) "the plaintiff's diligence in bringing the motion," (2) "any undue vexatiousness on plaintiff's part," (3) "the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial," (4) "the duplicative expense of relitigation," and (5) "the adequacy of plaintiff's explanation for the need to dismiss." *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990).  "Some, if not most, of these factors are influenced by the probable merit of the claims that a plaintiff is seeking to withdraw," because "[w]here a defendant has cast substantial doubt on the validity of a plaintiff's claims or

18

where such claims are dubious on their face, the prospect of relitigation offers little value but threatens much cost." *Republic of Colombia v. Diageo N. Am., Inc.*, 2011 WL 4828814, at *2 (E.D.N.Y. Sept. 30, 2011).

The Second Circuit has made clear that "a district judge may convert a dismissal sought to be entered without prejudice to one with prejudice." *Gravatt v. Columbia Univ.*, 845 F.2d 54, 56 (2d Cir. 1988). However, "fundamental fairness requires interpreting Rule 41(a)(2) to afford the plaintiff an opportunity to withdraw his motion and proceed with the litigation in the event that a district judge proposes to convert a voluntary dismissal to one with prejudice." *Id.* Given that plaintiffs' Third, Fourth, Fifth, and Sixth Claims appear to lack merit, and given the late stage of this case, defendants would be prejudiced if these claims are dismissed without prejudice at this point. Accordingly, plaintiffs' motion to withdraw their Third, Fourth, Fifth, and Sixth Claims without prejudice is denied. Plaintiffs are directed to inform the Court, in a writing filed on ECF within thirty days of this Order, whether or not they wish to request withdrawal of these claims with prejudice. If plaintiffs do not wish to withdraw these claims with prejudice, defendants will be granted leave to move for summary judgment.

**B.    *The Seventh and Eighth Claims***

In their Seventh Claim, plaintiffs allege that Pellegrini and "Defendants John Does Nos. 1 [through] 20" "have disregarded the distinct form and identity of Defendant Stewart Manor [Country Club], LLC and have used same for their individual purposes." (Compl. ¶ 44.) The Complaint sets forth a request for a declaratory judgment estopping Pellegrini and the John Doe defendants from "deny[ing] their personal liability for each and every obligation of Defendant Stewart Manor [Country Club], LLC," including compensatory and punitive damages arising

19

from this lawsuit.  (*Id.* ¶ 45.)  Plaintiffs further allege, in their Eighth Claim, that Pellegrini and the John Doe defendants caused Stewart Manor Country Club, LLC to improperly distribute corporate assets to themselves – rather than to plaintiffs in the form of the periodic cash payments required by the Contract of Sale – and, as such, they are liable "for each and every obligation of Defendant Stewart Manor [Country Club], LLC to Plaintiffs."  (*Id.*  ¶¶ 47-50; *see also* Hoolan Decl. ¶ 53.)

Plaintiffs assert that they "do not wish to pursue" their Seventh and Eighth Claims "[a]t this time."  (Hoolan Decl. ¶ 55.)  They request, however, that any dismissal of these claims be without prejudice so that "[i]f Stewart Manor [Country Club,] LLC will prove unable to pay the judgment which we request, my wife and I will revisit our options."  (*Id.*; *see also* Reply Mem. at 6.)  Plaintiffs' motion to withdraw their Seventh and Eighth Claims without prejudice is denied. The Court is, frankly, unable to comprehend why plaintiffs are withdrawing these claims at all if they believe that such a withdrawal could potentially prejudice their interests at some point in the future.[8]  Given the inadequacy of "plaintiff[s'] explanation for the need to dismiss," *see Zagano*, 900 F.2d at 14, and viewed in conjunction with plaintiffs' failure to articulate why any of the other *Zagano* factors weigh in favor of dismissal of these claims without prejudice at this point in the litigation, the Court denies plaintiffs' motion to withdraw their Seventh and Eighth Claims without prejudice.

---

[8]     Plaintiffs' citation to *Certain Underwriters at Lloyd's London v. St. Joe Minerals Corporation*, 90 F.3d 671, 676 (2d Cir. 1996), is inapposite, as that case dealt with the dismissal of an action pursuant to Rule 12(b)(1) – not Rule 41(a)(2).

## *CONCLUSION*

For the reasons set forth above, plaintiffs' motion seeking summary judgment in their favor as to their First and Second Claims and seeking the dismissal of defendants' counterclaim is denied.  Plaintiffs' motion to withdraw their Third, Fourth, Fifth, and Sixth Claims without prejudice is also denied.  Plaintiffs are directed to inform the Court, in a writing filed on ECF within thirty days of this Order, whether or not they wish to request withdrawal of these claims with prejudice.  If plaintiffs do not wish to withdraw these claims with prejudice, defendants will be granted leave to move for summary judgment as to these claims.  Finally, plaintiffs' motion to withdraw their Seventh and Eighth Claims without prejudice is denied.


**SO ORDERED.**

Dated: Central Islip, New York
　　　August 23, 2012                                                 _/s/_____
                                                                          Denis R. Hurley
                                                                          Unites States District Judge